UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NAKIA T. WILLIAMS, | ] |
| Plaintiff, | ] |
| vs. | ] 2:07-CV-0371-LSC |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.  Introduction.

Nakia T. Williams ("Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Williams timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Williams was twenty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 21-22.) Plaintiff has

a high school education and at the time of the administrative hearing, she was enrolled in classes at Lawson State Community College. *Id.* at 160. Her past work experiences include employment as a cake decorator for a grocery store and a waitress. *Id.* at 21. Ms. Williams claims that she became disabled on October 27, 2003, due to extreme hip pain related to the loosening of the prosthetic device inserted during a total hip arthroplasty in June 2004. (Doc. 8 at 9.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends

on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and

past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Williams meets the nondisability requirements for a period of disability and DIB and was insured through December 31, 2007. (Tr. at 15.) He further determined that Ms. Williams has not engaged in substantial gainful activity since the alleged onset of his disability.[1] *Id.* According to the ALJ, Plaintiff's status post right total hip arthroplasty secondary to avascular necrosis is an impairment which is considered "severe" based on the requirements set forth in the regulations. *Id.* at 16. However, he found that this impairment neither met nor medically equaled any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id.* at 17. The ALJ did not find Plaintiff's allegations to be totally credible, and he

---

[1] The ALJ noted that Plaintiff worked for EMC Enterprises on a part-time basis after her alleged onset date of disability, however, he determined that this work does not reach the level of substantial gainful activity. In addition, Plaintiff continued to work at Wendy's subsequent to her alleged onset date. This employment also did not reach the substantial gainful activity level. Finally, Plaintiff briefly worked at Pizza Hut in 2004, but the ALJ considered this employment as an unsuccessful work attempt and not substantial gainful activity.

determined that Plaintiff has the residual functional capacity to perform work consistent with the medical source assessment completed by Dr. Touger (Exhibit 4F), except that lifting/carrying objects must not exceed the light exertional level and she must have a sit/stand option.[2]  *Id.* at 19.

According to the ALJ, Ms. Williams is unable to perform any of her past relevant work, she is a "younger individual," and she has at least a "high school education" as those terms are defined by the regulations.  *Id.* at 21-22.  The ALJ determined that Plaintiff has "no transferable skills, although transferability of job skills is not material to the determination of disability [using the Medical-Vocational Rules]."  *Id.*  According to Medical-Vocation Rule 202.22 (light past relevant work) and Rule 201.28 (sedentary past relevant work), a person of Plaintiff's age, education, and experience, who can perform light or sedentary work is considered "not disabled."  However, because Plaintiff's ability to perform all or substantially all of the requirements of this level of work have been impeded by additional limitations, the ALJ elicited testimony from a Vocational Expert ("VE") to

---

[2]Light work involves lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects up to ten pounds.  *See* 20 C.F.R. § 404.1567.

determine if there are a significant number of jobs in the national economy that Plaintiff is capable of performing. *Id.* at 22. The VE testified that there are a number of jobs in the local economy that a person with Plaintiff's limitations would be able to perform. Those jobs include: inventory clerk (240 jobs available in north central Alabama), security monitor (210 jobs available in north central Alabama), and telemarketer (180 jobs available in north central Alabama). *Id.* According to the VE, the jobs listed were sedentary to limited light and allowed a sit/stand option. *Id.* He also testified that 212,000 such jobs existed nationally. *Id.* The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, from October 27, 2003 through the date of this decision." *Id.* at 23.

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401

(1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards

is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.  Discussion.

Ms. Williams alleges that the ALJ's decision should be reversed and remanded because she believes that the ALJ improperly evaluated her subjective complaints of pain. *See generally* Doc. 8. Specifically, Ms. Williams alleges that the "relationship between the plaintiff's claimed pain and the underlying medical condition (loosening of the prosthetic hip) satisfies the pain standard for establishing disability." *Id.* at 9.

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)

(citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also* *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ found that Ms. Williams met the first prong of the Eleventh Circuit's pain standard, but he did not believe that the evidence

confirmed the severity of the alleged pain arising from that condition or that any medical condition existed that was of such severity that it could reasonably be expected to give rise to the disabling pain and other limitations alleged by Plaintiff. (Tr. at 19.) To support this finding, the ALJ noted that although Plaintiff described pain in her right hip and lower extremity, as well as discomfort and numbness related to a popping sensation in her hip, she stated that her symptoms varied in severity from day to day. *Id.* The ALJ also stated that despite this alleged pain, Plaintiff has not returned to her surgeon, Dr. Stephenson, since she began having symptoms. Plaintiff's surgery was performed in June 2004, and she last saw Dr. Stephenson in October 2004. At the time of that visit, Dr. Stephenson reported that Ms. Williams was doing reasonably well with some mild thigh pain only. *Id.* He stood by the restrictions previously outlined, that claimant could work, occasionally lifting 50 pounds and frequently lifting 25 pounds, standing and walking six hours a day, and no more than frequently climbing stairs, stooping, kneeling, crouching, and crawling. The ALJ further noted that Plaintiff:

> returned to see Dr. Stephenson on two occasions when she was

> doing well, and it is unclear why she would have failed to return to him again when she began having problems. The claimant testified at the hearing that she believed Dr. Stephenson's office had moved to another building, but she was unable to explain further why she had failed to seek additional treatment from Dr. Stephenson. It is unlikely that a person experiencing a disabling level of pain and limitations would fail to seek medical treatment.

*Id.* The ALJ also considered that Plaintiff did not seek any medical treatment of any kind from October 2004, until she visited the emergency room in May 2006. *Id.* During that period of time, Plaintiff attended school and worked on a part-time basis. *Id.* at 20.

While both the x-rays taken at the May 2006 emergency room visit and Dr. Touger's report indicate that Plaintiff may be experiencing a loosening of her prosthesis, neither the emergency room physician nor Dr. Touger reported any disabling pain or limitations. *Id.* Also, despite a recommendation by both the emergency room physician and Dr. Touger, Plaintiff failed to seek additional treatment from Dr. Stephenson. *Id*.

The ALJ further noted that:

> [a]lthough the claimant testified that she was taking Percocet on occasion, that medication was prescribed for her when she was seen in the emergency room on May 30, 2006, for acute pain due to sprain/strain. She reported at the time of her emergency-

room visit in May 2006 that she had been experiencing right hip pain for two weeks. She did not report that she had significant chronic pain. She reported to Dr. Touger in March 2006 that she was taking no medication, and she reported in the emergency room visit in May 2006 that she was taking no daily medication. It is unlikely that a person experiencing a disabling level of pain would not be taking even over-the-counter medication for that pain.

*Id*.

Finally, the ALJ considered Plaintiff's claim that the medication that she is taking requires her to lie down and/or sleep half of the day, three or four times per week. *Id*. The ALJ stated that:

> there is no evidence that the claimant would require such medication for an extended period, nor that it would be prescribed for her for an extended period. The claimant required no medication prior to March 30, 2006, and had sought no medical treatment in more than a year. The claimant's daily activities, which include college and part-time work, are not indicative of disabling pain and limitation.

*Id*.

It appears to the Court that the ALJ thoroughly and specifically addressed Plaintiff's allegations of pain in his opinion, and he provided explicit and reasonable reasons for rejecting her testimony. The objective medical and other evidence supports the ALJ's conclusion that Plaintiff's

condition did not cause disabling limitations and instead shows that she could perform a limited range of medium work with additional restrictions.

IV. Conclusion.

Upon review of the administrative record, and considering all of Plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 7th day of March 2008.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671